ASH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Daniel Avila Marin,

    Petitioner,

v.

Pamela Bondi, et al.,

    Respondents.

No. CV-25-03251-PHX-SMB (JFM)

**ORDER**

On September 9, 2025, Petitioner Daniel Avila Marin, who is currently detained in the Florence Correctional Center in Florence, Arizona, filed, through counsel, a Petition for Writ of Habeas Corpus Under § 2241 (Doc. 1), and a Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2). By Order dated September 8, 2025, the Court ordered Respondents to answer the Petition and respond to the injunctive motion on an expedited basis. (Doc. 7). Both the Petition and injunctive motion are now fully briefed. (Docs. 9, 10, 11, 12). For the reasons that follow, the Court will grant the Petition and order that Petitioner be immediately released from custody.

## I. Background

Petitioner is a native and citizen of Mexico who first entered the United States in 1981. (Doc. 1 at 3; Doc. 9 at 2).[1] In 1991, Petitioner was granted lawful permanent resident

---

[1] Respondents' response to the injunctive motion (Doc. 9) and answer to the Petition (Doc. 11) are functionally identical, and provide the same evidence. As such, because the answer indicates that it is, as to the background recited here, "reproduce[ing] the facts and procedural history contained in its Response [Doc. 9]," the Court will cite herein only to Doc. 9 and its attachment in the interest of brevity.

status. (Doc. 9 at 2). In 1994, Petitioner was convicted of drug possession in California, and subsequently placed in deportation proceedings. (*Id.*). On October 29, 1997, an Immigration Judge (IJ) ordered Petitioner removed to Mexico. (*Id.*). Petitioner timely appealed the IJ's order, but on March 22, 2002, the Board of Immigration Appeals (BIA) dismissed his appeal. (*Id.*). On November 5, 2013, Petitioner was removed to Mexico. (*Id.*). On or about December 13, 2013, Petitioner attempted to re-enter the United States, and was encountered by Customs and Border Patrol (CBP). On June 10, 2014, Petitioner was again removed to Mexico. (*Id.*).

On May 15, 2024, Petitioner was encountered by CBP in Nogales, Arizona, charged with illegal re-entry, and transferred to the custody of the United States Marshalls Service. (*Id.* at 2-3). Petitioner was subsequently convicted of illegal re-entry, and sentenced to 120-days imprisonment. (*Id.* at 3). On September 12, 2024, Petitioner was remanded to ICE custody to effect his removal to Mexico pursuant to the 1997 removal order. (*Id.*). That same day, Petitioner expressed fear of returning to Mexico, and was referred to an asylum officer for a credible fear interview. (*Id.*). On September 30, 2024, the asylum officer found that Petitioner had a reasonable fear of return to Mexico, and Petitioner was referred to an IJ. (*Id.*). On April 2, 2025, the IJ granted relief pursuant to the Convention Against Torture (CAT), prohibiting Petitioner's removal to Mexico. (*Id.*). The government did not appeal that ruling. (*Id.*).

On July 20, 2025, ICE notified the Removal Management Division (RMD) that it had, at some point, "reached out" to Spain, Guatemala, and El Salvador "for third country removal." (*Id.*). Follow-up requests for "status" were made by ICE to RMD on August 17, 2025, and September 2, 2025 (*id.*), but no further information has been provided about what these "reach outs" consisted of or what their status is.

As of the date of this Order, Petitioner has been detained by ICE for more than a year.

**II.    Legal Standard**

Petitioner's continued detention is governed by 8 U.S.C. § 1231 and *Zadvydas v.*

*Davis*, 533 U.S. 678 (2001). Under § 1231(a)(1), the government has 90 days in which to remove an alien once a removal order becomes final. Detention during this removal period is mandatory. 8 U.S.C. § 1231(a)(2). If the government is unable to effect removal within the 90-day removal period, however, continued detention of aliens such as Petitioner becomes discretionary. 8 U.S.C. § 1231(a)(6). That discretion, however, is not unfettered, and indefinite detention is not permitted. *Zadvydas*, 533 U.S. at 689 (§1231(a)(6) "does not permit indefinite detention."). This is not to say that every alien like Petitioner must be released once the 90-day removal period has expired. 533 U.S. at 701. Rather, the Supreme Court in *Zadvydas* recognized an implicit post-§ 1231(a)(2) period in which continued detention is "presumptively reasonable" and does not violate the Fifth Amendment. *Id.* The *Zadvydas* Court concluded that this "presumptively reasonable" period extends for no more than 6-months once an order of removal becomes final (including the 90-day mandatory detention period under § 1231(a)(2)). *Id.* Thereafter, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If, after considering the evidence, the Court finds that "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699.

**III. Discussion**

As noted, Petitioner has now been detained for more than a year, well beyond the "presumptively reasonable" period set forth in *Zadvydas*. As such, to obtain relief Petitioner must first provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and, if he does so, Respondents "must respond with evidence sufficient to rebut that showing." *Id.*

Here, Petitioner's final order of removal directs that he be removed to Mexico. However, that removal is prohibited by the IJ's subsequent ruling—unchallenged by the government—that removing Petitioner to Mexico would violate the CAT. There is thus more than "good reason" to believe that Petitioner's removal to Mexico is not significantly

likely to occur in the reasonably foreseeable future. Respondents have not, and do not attempt, to rebut that contention. (Doc. 9 at 7) (Petitioner is "currently unremovable to Mexico.").

Rather, Respondents provide a lone declaration from Nellie Martinez, a Deportation Officer with ICE. (Doc. 9-1). Ms. Martinez states that on July 20, 2025, ICE notified RMD that it had, at some point, "reached out" to Spain, Guatemala, and El Salvador "for [third] County removal," and that ICE had "follow[ed] up" with RMD as to "status" on August 7, 2025, and September 2, 2025. (*Id.* ¶¶ 24-26).

This evidence is not sufficient. As an initial matter, it does not appear that Ms. Martinez has any personal knowledge as to the events she describes. Ms. Martinez identifies herself as "the docket officer over the case of [Petitioner]," and that her declaration is made based on her "review of [Petitioner's] file maintained by DHS." (*Id.* ¶ 2). At best, Ms. Martinez has personal knowledge as to the contents of Petitioner's "file," but is unqualified to attest that those events actually occurred or whether they are accurately reflected in Petitioner's "file."

More importantly, Ms. Martinez sheds no light on what it means that ICE "reached out" to Spain, Guatemala, and El Salvador. No evidence providing any context into these alleged communications has been provided. Ms. Martinez does not attest, for instance, that ICE requested—formally or otherwise—that any of those countries accept Petitioner. Indeed, Respondents only characterize removal to these countries as "being considered." (Doc. 9 at 13; Doc. 11 at 11). No evidence has been provided to support that removal to these three countries (or any others) is actually being pursued.

The Supreme Court held in *Zadvydas* that as the period of detention grows, "what counts as the 'reasonably foreseeable future' would have to shrink." 533 U.S. at 701. As noted, Petitioner has now been detained for more than a year, and, at this late juncture, the "reasonably foreseeable future" must be very short. Petitioner having provided "good reason" to support that his removal to Mexico is not significantly likely to occur in the reasonably foreseeable future (i.e. it is prohibited under the CAT), the burden shifts to

Respondents to rebut that showing with competent evidence. *Id.* Respondents have failed to do so. No evidence has been provided to support that removal to any third country is actually being pursued, much less that it is significantly likely to occur in the reasonably foreseeable future. *Id.* Accordingly, the Court finds that Petitioner's continued detention is in violation of the Fifth Amendment,[2] and will thus grant the Petition.[3]

**IT IS ORDERED:**

(1) The Petition for Writ of Habeas Corpus (Doc. 1) is **granted** only as to release, all other relief is denied..

(2) Respondents must **IMMEDIATELY RELEASE** Petitioner from custody.

(3) No more than **48 HOURS** from the time of this Order, Respondents must file a notice of compliance.

(4) Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) is **denied as moot**.

(5) The Clerk of Court must enter judgment accordingly, and close this case.

Dated this 10th day of November, 2025.

Honorable Susan M. Brnovich
United States District Judge

---

[2] Because the Court finds that Petitioner is entitled to relief on his Fifth Amendment claim, it does not reach Petitioner's additional claims that his continued detention violates the Administrative Procedures Act and the Suspension Clause.

[3] Because the Court grants the Petition, it will deny the injunctive motion as moot.